UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

ANTHONY L. GOODWIN                                                    PLAINTIFF

vs.                                              CIVIL ACTION NO. 3:20-CV-694-CRS

NEWCOMB OIL CO., LLC                                                  DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court on cross-motions for summary judgment.  DNs 143, 146.

Both motions are ripe for adjudication.  For the following reasons, Plaintiff's motion will be

denied, and Defendant's motion will be granted.

## I.    BACKGROUND

This employment discrimination action arises from the termination of Plaintiff Anthony L.

Goodwin, an African American man.  DN 1.  Defendant Newcomb Oil Co., LLC ("Newcomb

Oil") employed Goodwin as a transport driver from December 26, 2018, to October 8, 2019.  DN

146-2, at PageID # 6155, 6159.  The position involved driving petroleum transport tankers and

loading and unloading petroleum products.  *Id.* at 6155.  Newcomb Oil terminated Goodwin's

employment based on driving incidents that occurred on September 26 and 29, 2019.  *Id.* at 6158–

59; DN 143-8.

### A.    September 26 Customer Complaint

Newcomb Oil received a telephonic complaint from a member of the public on September

27, 2019.  DN 146-7.  A summary of the complaint was emailed to Newcomb Oil's Transportation

Administrator Adrienne Hardin:

> A trucker pulled out from Withrow Ct at Bardstown Mills yesterday around 5:30
> pm.  The caller is complaining that the driver was weaving in and out of traffic

without using blinkers and then got behind her in the fast lane and was tailgating her. The front of the truck said TK 128 but the back had 120 on it.

DN 143-1.  Location and driver history for the truck showed that Goodwin was driving at the time and location identified in the complaint.  DN 146-3, at PageID # 6257.  On September 26, 2019, at 5:27 p.m., Goodwin drove on Withrow Court in Bardstown, Kentucky at a speed of 38 miles per hour ("MPH"), and turned onto  Highway 245, where his truck's speed reached 66 MPH.  DN 146-4, at PageID # 6372–74.   From the truck's location history data, Hardin concluded that Goodwin "was driving the vehicle reported by the caller complaint, and the location history maps corroborated the caller complaint and demonstrated Mr. Goodwin was speeding."  DN 146-9, at PageID # 6415.

### B.      September 29 Highway Turn

On September 29, 2019, Hardin witnessed "a Newcomb Oil transport truck abruptly pull out of a FiveStar[1] service station and turn right onto Highway 245 in Bardstown in front of an oncoming car without stopping."  DN 146-9, at PageID # 6415; *see also* DN 146-3, at PageID # 6259–60.  Hardin observed a car following in the lane behind the Newcomb Oil truck slam on its brakes.  DN 146-3, at PageID # 6263.  In an email requesting surveillance video, Hardin stated she witnessed "one of our transport trucks pulling in front of a car."  *Id.* at 6259.  Hardin used "location history maps to determine Mr. Goodwin was driving the transport truck" she had observed.  DN 146-9, at PageID #6415.  The speed limit on Highway 245 in front of the FiveStar service station is 55 MPH.  DN 146-4, at PageID # 6345, 6347.  Goodwin admits he was driving the truck depicted in the surveillance video and that he struck the curb during the turn.  *Id.* at 6346–47, 6349.

The FiveStar surveillance video depicts a tanker truck driving in the FiveStar parking lot and, without stopping, turning right onto a two-lane highway and striking the curb.  DN 146-3,

---

[1] Newcomb Oil owns and operates FiveStar service stations.  DN 146-2, at PageID #6157.

PageID # 6304, *September 29, 2019 Surveillance Video Footage*.  As the truck turns onto the highway, a car traveling in the opposing traffic lane passes the truck.  *Id.*  Shortly after the turn, a car traveling in the traffic lane behind the truck comes within a few feet of the truck.  *Id.*

### C.    Goodwin's Termination

On September 30, 2019, Newcomb Oil owners Daniel Newcomb and Jack Newcomb; Human Resources Manager Glenn Higdon; Hardin; and dispatcher Doug Sims discussed the two incidents over email.  DN 146-2, at PageID # 6157; *see id.* at 6153, 6164, 6216-21.  Higdon determined that had Goodwin been convicted for the September 26 and 29 incidents "he would have been disqualified from operating a commercial vehicle for sixty (60) days because the events constitute separate incidents involving two or more offenses listed in 49 C.F.R. § 383.51." *Id.* at 6157–58.

On October 3, 2019, Daniel Newcomb and Higdon met with Goodwin to discuss the incidents.  *Id.*  Higdon suspended Goodwin without pay.  DN 146-2, at PageID # 6158.  After the meeting, Goodwin showed Higdon a video he had recorded while driving a Newcomb Oil truck on September 29.  *Id.*  Goodwin recorded the video with his iPhone.  DN 146-4, at PageID # 6353.  The video depicts Goodwin's truck driving behind a sedan on the road for several minutes.  DN 146-4, at PageID # 6375, *September 29, 2019 Goodwin Video*.  Goodwin said he recorded the video because a "car came around me acting erratic and slowing down in front of me and braking in front of me, and then that's when I set the camera on the dash and took pictures, took a video of it." DN 146-4, at PageID # 6353.

Higdon concluded that the cell phone video and FiveStar surveillance video demonstrated that Goodwin violated company policy on September 29.  DN 146-2, at PageID # 6158.  On October 7, 2019, Higdon contacted Nancye Combs, a risk management consultant, to review the

3

September 26 customer complaint and September 29 surveillance video.  *Id.* at 6158.  Combs

recommended Goodwin's termination due to safety concerns.  *Id.* at 6158–59.  Higdon and Daniel

Newcomb "determined [Goodwin's] conduct constituted an unacceptable safety and liability

concern and violated Newcomb Oil's policies by operating a Newcomb Oil vehicle in a reckless,

careless, and dangerous manner on September 26, 2019 and September 29, 2019."  *Id.* at 6159.

Goodwin was terminated via letter dated October 8, 2019.  *Id.*; DN 143-8.  The termination letter

states:

> This correspondence is in reference to the reported driving behaviors from a
> customer on September 26, 2019 that you were changing lanes without a signal and
> tailgating after pulling out of Withrow Ct. onto Hwy 245 and on October 1, the
> video at FiveStar #2265 captured you pulling out of onto Hwy 245 without stopping
> and causing a driver to take evasive action to avoid what would have been a three-
> vehicle accident. . . .
> After review, risk management has determined the following: *"The aggressive or
> careless use of a company tanker is unacceptable and dangerous regardless of the
> conduct of any other driver on the road.  Once this information became known to
> the company, the driver should be disqualified from driving a company vehicle
> immediately."*

DN 143-8 (emphasis in original).[2]

Goodwin filed suit in this Court, alleging that Newcomb Oil discriminated against him by

subjecting him to disparate treatment on the basis of race in violation of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*  Goodwin asserts supplemental state law claims

under the Kentucky Civil Rights Act ("KCRA"), Kentucky Revised Statutes ("KRS") 344.010, *et*

---

[2] The termination letter incorrectly states that the turn onto Highway 245 occurred on "October 1."  *Id.* The incident captured on FiveStar surveillance video, and described in the termination letter, occurred on September 29, 2019.  DN 146-2, at PageID # 6156–57, 6212–15.

*seq.* Goodwin and Newcomb Oil filed cross motions for summary judgment on all claims, and the motions are fully briefed and ripe for review.  DNs 143, 146, 151, 153,[3] 157, 158.

## II.     LEGAL STANDARD

A party moving for summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing the nonexistence of any issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).  The burden may be met by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the . . .  presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1).  The burden may also be met by demonstrating that the nonmovant failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  If the movant bears the burden of persuasion on an issue at trial, "the plaintiff on a claim for relief or defendant on an affirmative defense[,] his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (citation and emphasis omitted).

If the moving party satisfies the burden, the nonmoving party must produce specific facts showing a material issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.*  A genuine issue

---

[3] Goodwin has moved for leave to exceed the page limit in his response to Newcomb Oil's motion for summary judgment.  DN 154.  Despite Newcomb Oil's objection (DN 155), the Court finds the request to file a response that exceeds the page limitation of LR 7.1(d) by one page is reasonable.  The Court will grant the motion.

for trial exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.  In undertaking this analysis, the Court must view the evidence in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 1774, 167 L. Ed. 2d 686 (2007).  On summary judgment, if video evidence is available and one party's story "is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should" view "the facts in the light depicted by the videotape." *Id.* at 380–81.

## III.   DISCUSSION

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Courts interpret Title VII and KCRA discrimination claims under the same standard.  *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000) ("Because [the KCRA] mirrors Title VII . . . we use the federal standards for evaluating race discrimination claims.").  A Title VII plaintiff may establish discrimination "by putting forward direct evidence that the defendant had a discriminatory motive" or by utilizing "the indirect burden-shifting approach first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03, S.Ct. 1817, 36 L.Ed. 2d 668 (1973)." *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998).  Goodwin argues that Newcomb Oil's rationale for his termination was mere pretext, and seeks to prove racial discrimination using the indirect burden-shifting approach. DN 153, at PageID # 6858.

Under the *McDonnel Douglas* framework, the plaintiff  must first "carry the initial burden under the statute of establishing a prima facie case of racial discrimination."  411 U.S. at 802.  "Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254,

101 S. Ct. 1089, 1094, 67 L. Ed. 2d 207 (1981).  If the prima facie case is established, the burden

shifts "to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse

employment action.  *McDonnel Douglas*, 411 U.S. at 802.  "If the defendant carries this burden of

production, the presumption raised by the prima facie case is rebutted."  *Burdine*, 450 U.S. at 255.

The "plaintiff must then have an opportunity to prove by a preponderance of the evidence that the

legitimate reasons offered by the defendant were not its true reasons, but were a pretext for

discrimination."  *Id.* at 253.

### A.    Prima Facie Case

The plaintiff has the initial "duty to establish a prima facie case by showing such facts as give

rise to an inference of unlawful discrimination.  That is a burden easily met."   *Wrenn v. Gould*,

808 F.2d 493, 500 (6th Cir. 1987).  To establish a prima facie case, the plaintiff must demonstrate

the following elements: "(1) [he] was a member of a protected class; (2) [he] was discharged; (3)

[he] was qualified for the position; and (4) [he] was replaced by a person outside the class."

*Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992).  "The fourth element may also be

satisfied by showing that similarly situated non-protected employees were treated more

favorably."  *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002) (quoting *Talley v. Bravo

Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995)).  The first two elements of Goodwin's prima

facie case are not in dispute.

### 1.    Qualification

Newcomb Oil argues Goodwin has not established the third element of his prima facie case

because he was not qualified for his position.  A plaintiff may demonstrate he is qualified "by

presenting credible evidence that his or her qualifications are at least equivalent to the minimum

objective criteria required for employment in the relevant field."  *Wexler v. White's Fine Furniture,*

*Inc.*, 317 F.3d 564, 576 (6th Cir. 2003).  The plaintiff's qualification is established independently from the employer's proffered reasons for discharge.  *Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 585 (6th Cir. 2002).

Newcomb Oil argues Goodwin was not qualified for his position because he was not honest in his Newcomb Oil job application.  DN 146-1, at PagedID # 6139.  The Court finds the cases cited involving discrimination in hiring practices unpersuasive.  *See E.E.O.C. v. Cintas Corp.*, 737 F. Supp. 2d 764 (E.D. Mich. 2010) (discriminatory hiring practices); *Da Silva v. Mental Health & Mental Retardation Auth.*, No. 4:12-cv-3136 (S.D. Tex. Aug. 30, 2015) (discriminatory hiring practices).  In *Greene v. Standard Reg. Co.*, a discriminatory termination case, the district court determined that a defendant would be entitled to judgment as a matter of law if he proved that a plaintiff's misrepresentations on an employment application would have led to discharge.  No. 1:91-CV-204, 1992 WL 677502 (W.D. Mich. Nov. 18, 1992).  But the *Greene* court required that the employer "provide proof, by way of affidavit or otherwise, of its policies and/or practices with respect to employees discovered to have omitted or misrepresented facts on an employment action." *Id.* at *7.  Newcomb Oil failed to identify evidence of its policies or practices with respect to employees discovered to have omitted or misrepresented facts in the employment application.  Therefore, Newcomb Oil has failed to demonstrate that an employee is unqualified because of a misrepresentation or omission on an employment application.

Goodwin has produced evidence that Newcomb Oil certified he met driver requirements on his annual review.  DN 143-6.  This is evidence from which a reasonable jury could conclude that Goodwin was qualified for his position, thus Goodwin has satisfied the third element of the prima facie case.

## 2.      Similarly Situated Employees

Goodwin attempts to satisfy the fourth element of the prima facie case by pointing to similarly situated non-protected employees who were not terminated after vehicle collisions or policy violations.  DN 143, at PageID # 5945.   Newcomb Oil argues these employees were not similarly situated because the conduct was not the same.  DN 146-1, at pageID # 6140.  The Sixth Circuit has explained:

> [T]o be deemed "similarly-situated" in the disciplinary context, "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."

*Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Mitchell*, 964 F.2d at 583)).   The similarly situated standard does not require an exact comparison between the plaintiff and other employees "in every single aspect of their employment."  *Id.*   But the plaintiff is "required to prove that all of the *relevant* aspects of his employment situation were 'nearly identical' to those of the [non-minority's] employment situation." *Id.* (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994)) (alteration and emphasis in original).   "Absent proof that other employees were similarly situated, it is not possible to raise an inference of discrimination."  *Nickell v. Memphis Light, Gas & Water Div.*, 16 F. App'x 401, 402 (6th Cir. 2001) (quoting *Shah v. Gen. Elec. Co.*, 816 F.2d 264, 270 (6th Cir. 1987)).

Goodwin argues that the non-protected Newcomb Oil employees caused "actual damage" (DN 143 at PageID # 5946) and "cost Defendant money" but were not terminated.  *Id.* at 5948. Goodwin points to three Caucasian Newcomb Oil transport drivers as similarly situated non-

protected employees who were treated more favorably.[4]   *Id.* at 5942–5944.   Goodwin also generally identifies ten additional Caucasian transport drivers involved in vehicle collisions in Newcomb Oil transport trucks who were not terminated.[5]   DN 153, at PageID # 6872; DN 153-25, at PageID # 6964–68.

Newcomb Oil argues that the identified employees did not have "multiple instances of reckless careless, and dangerous driving" that occurred within three days, and therefore these employees did engage in the same conduct as Goodwin.   DN 146-1, at PageID # 6141.   Goodwin's termination letter states that he was terminated for "aggressive or careless use of a company tanker" based on the highway driving incidents of September 26 and 29, 2019.   DN 143-8. Goodwin has not identified a single Newcomb Oil employee who engaged in two incidents of aggressive or careless driving in a Newcomb Oil tanker within three days, or any similar time period.   Goodwin has not identified a single Newcomb Oil employee with two policy violations or traffic citations within a similar time period.   The Court finds the short time between driving incidents a "differentiating" circumstance that distinguishes the conduct and discipline.   *See Ercegovich*, 154 F.3d at 352.   Consequently, Goodwin has failed to identify a similarly situated employee who was treated more favorably.   Therefore, the Court finds that Goodwin has not met

---

[4] Robert Mineau, Bill Adams, and Rebecca Clark were Newcomb Oil transport drivers involved in collisions in Newcomb Oil vehicles. DN 153-25. Newcomb Oil determined Mineau and Adams were not at fault in their collisions. DN 146-10, at PageID # 6708; DN 151-2, at PageID # 6836. Clark struck a pole at a FiveStar gas station. DN 146-2, at PageID # 6157; DN 146-3, at PageID # 6288; DN 146-12, at PageID # 6752. These employees received written discipline notices for violations of Newcomb Oil policies or Federal Motor Carrier Safety Administration ("FMCSA") regulations that did not involve driving violations. DN 143-15; DN 143-13; DN 151-2, at PageID # 6840–41. Goodwin points to traffic citations issued to these drivers in both commercial and non-commercial vehicles, without citation to evidence that the traffic citations were related to careless or aggressive driving in a Newcomb Oil transport truck. DN 143-16.

[5] Goodwin has not identified evidence that the Newcomb Oil employees were at fault or that the collisions involved aggressive or careless driving. Goodwin has produced traffic citations issued to these drivers, without citation to evidence that the traffic violations occurred in Newcomb Oil transport trucks. DN 143-20. Similarly, Goodwin has produced traffic citations issued to Higdon and Daniel Newcomb (DN 143-18), without evidence that they are similarly situated employees or that the violations occurred in Newcomb Oil trucks.

his burden to demonstrate a genuine issue of material fact as to the fourth element of the prima facie case.

Yet the Sixth Circuit has described the burden of demonstrating a prima facie case as "easily met." *Wrenn*, 808 F.2d at 500. Because Goodwin has identified evidence of careless driving by Caucasian Newcomb Oil transport drivers who were not terminated, the Court will proceed to the next step of the *McDonnell-Douglas* framework assuming*, arguendo*, that Goodwin has established a prima facie case of employment discrimination.

### B.    Non-Discriminatory Justification

Newcomb Oil determined that Goodwin's "aggressive or careless use of a company tanker" (DN 143-8) in two September incidents "constituted an unacceptable safety and liability concern and violated Newcomb Oil's policies." DN 146-2, at PageID # 6154–55, 6159, 6172. This is a legitimate, nondiscriminatory justification for termination. Newcomb Oil has met its burden of production and has successfully rebutted the presumption of discrimination raised by the prima facie case. *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255 (1981).

### C.    Pretext

The burden then shifts to Goodwin to demonstrate that Newcomb Oil's justification was pretext for discrimination, "i.e. that the employer's explanation was fabricated to conceal an illegal motive." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). "A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action 'by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (quoting *Dews v. A.B.*

11

*Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)).  "[A] plaintiff may demonstrate pretext by producing 'evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Braithwaite v. Timken Co.*, 258 F.3d 488, 497 (6th Cir. 2001) (quoting *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994)).  "[S]ummary judgment is proper if, based on the evidence presented, a jury could not reasonably doubt the employer's explanation."  *Chen*, 580 F.3d at 400 n.4.

Goodwin argues that Newcomb Oil's justification for his termination is mere pretext because the proffered justification: (1) has no basis in fact; (2) did not actually motivate the termination because "Defendant issued no discipline or mere slaps on the wrist to Mr. Goodwin's Caucasian counterparts for much more egregious workplace infractions;" and (3) was insufficient to warrant termination because Goodwin's driving "did not cause any actual damage."  DN 153, at PageID # 6867–68.

### 1.    Factual Basis

Goodwin argues Newcomb Oil's proffered reason for termination "has no basis in fact because while his termination letter states that he nearly caused a three-car pileup, the video . . . shows Mr. Goodwin peacefully making a turn from an intersection while two other drivers remain completely unperturbed in any way, shape or form."  *Id.*  To rebut the employer's justification, a plaintiff must show "'more than a dispute over the facts'" but "must put forth evidence that Defendants did not 'honestly believe' in the given reason for Plaintiff's termination."  *Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 502 (6th Cir. 2007) (quoting *Braithwaite*, 258 F.3d at 494).  Because the plaintiff has the burden of persuasion, he must produce evidence that would support a rejection of the employer's explanation.  *Id.*  To evaluate an employer's honest

belief courts "examine whether [the employer] established a 'reasonable reliance' on the particularized facts available to the company in firing" the employee. *Id.* at 502–03 (quoting *Braithwaite*, 258 F.3d at 494). "The critical inquiry is whether [the employer] made a 'reasonably informed and considered decision.'" *Id.* at 503 (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)).

Goodwin does not identify evidence to reject Newcomb Oil's reliance on the September 26 customer complaint. Newcomb Oil corroborated the complaint by determining that Goodwin was driving at the place and time complained of by the caller, and that the truck was driving at 66 MPH on a highway with a 55 MPH speed limit. DN 146-4, at PageID # 6345, 6374. Newcomb Oil determined this incident involved offenses listed in 49 C.F.R. § 383.51. DN 146-2, at PageID # 6157. Goodwin makes a general argument that the caller may have had a subjective interpretation of "tailgating" and that Newcomb Oil could have investigated the caller. DN 153, at PageID # 6850. However, Goodwin has cited no evidence to refute Newcomb Oil's honest and reasonable reliance on the customer complaint. "When an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" *Chen*, 580 F.3d at 401 (quoting *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 713–15 (6th Cir. 2007)).

Goodwin argues that the September 29 surveillance video shows him "peacefully making a turn from an intersection while two other drivers remain completely unperturbed in any way, shape, or form." DN 153, at PageID # 6867–68. He argues that Newcomb Oil's termination letter is a misrepresentation of the video evidence. *Id.* The video evidence demonstrates that Goodwin's truck made a right turn from the FiveStar service station lot onto a highway, on which a car travels in the opposing lane of traffic, without stopping and striking the curb. DN 146-3, PageID # 6304,

13

*September 29, 2019 Surveillance Video Footage*.  A sedan follows behind Goodwin's truck shortly after the turn, gaining ground within a short distance.  *Id.*  Thus, the video evidence does not refute Newcomb Oil's interpretation that the turn caused "a driver to take evasive action to avoid what would have been a three-vehicle accident."  DN 143-8.  Indeed, Hardin stated she observed the car following Goodwin's truck slam on its brakes.  DN 146-3, at PageID # 6263.  After reviewing the surveillance video, Newcomb Oil owner Jack Newcomb observed: "Fortunate he didn't hit the east bound car.  Didn't even stop and hit the curb.  Could have been a tragic three vehicle accident."  DN 146-2, at PageID # 6219.  The video does not support a rejection of Newcomb Oil's honest belief in the justification for Goodwin's termination based on his driving on September 29.

Newcomb Oil relied on Hardin's firsthand observation of Goodwin's driving on September 29, in conjunction with the surveillance video and location maps, to determine that Goodwin operated his petroleum tanker in a reckless, careless and dangerous manner.  DN 146-2, at PageID # 6156–57.  Newcomb Oil had the September 29 video evidence and September 26 customer complaint reviewed by a risk management consultant who recommended Goodwin be terminated "as a result of safety concerns."  DN 143-8; DN  146-2, at PageID # 6159.  Goodwin has not demonstrated that Newcomb Oil did not honestly or reasonably rely on particular facts in making the employment decision, but instead simply argues for a different interpretation of the evidence.  Goodwin must show "more than a dispute over the facts upon which his discharge was based."  *Braithwaite v. Timken Co.*, 258 F.3d 488, 494 (6th Cir. 2001).  Goodwin failed to produce evidence from which a reasonable factfinder could find that Newcomb Oil did not make a reasonably informed and considered decision to terminate based on particularized facts.  Goodwin has failed to establish that Newcomb Oil did not honestly believe in the proffered non-discriminatory reason for discharge.

14

## 2.   Newcomb Oil's Motivation

Goodwin next argues that Newcomb Oil's non-discriminatory justification did not actually, and was insufficient to, motivate his termination because Newcomb Oil "issued no discipline whatsoever to Plaintiff's Caucasian counterparts for much more egregious workplace infractions." DN 143, at PageID # 5946.

A plaintiff "can establish pretext by showing that it 'was more likely than not' that Defendants terminated Plaintiff based on an illegal motivation.*" Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 503 (6th Cir. 2007) (quoting *Manzer v. Diamond Shamrock Chemicals Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994)).  "It is well-established that a plaintiff may demonstrate pretext by producing 'evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated its discharge of the plaintiff." *Braithwaite*, 258 F.3d at 497 (quoting *Manzer*, 29 F.3d at 1084).

Goodwin points to Caucasian employees he argues engaged in "much more egregious workplace infractions" without being terminated.  DN 153, at PageID #  6868.  However, as the Court has noted in the discussion of his prima facie case, Goodwin was fired for "aggressive or careless use of a company tanker" in two separate driving incidents within a three day period.  DN 143-8, at PageID # 5967.  Goodwin has not identified a Newcomb Oil employee who engaged in two incidents of aggressive or careless driving within one week, or any similar time period, and received more favorable treatment.  Therefore, Goodwin has not identified an employee who engaged in "substantially identical conduct." *Braithwaite*, 258 F.3d at 497.  Accordingly, the fact that non-protected employees were not terminated does not tend to show that Newcomb Oil

discriminated against Goodwin by terminating him for two incidents of aggressive or careless driving in a company tanker in a three day period.

Goodwin has not produced evidence from which a reasonable factfinder could reject Newcomb Oil's justification for his termination. For this reason, a reasonable jury could not find that it was more likely than not that Newcomb Oil's justification for Goodwin's termination was merely pretext for discrimination. Therefore, Newcomb Oil is entitled to summary judgment on Goodwin's Title VII disparate treatment claim and KYCRA claim.

## IV.    CONCLUSION

Because the Court has determined that Defendant is entitled to judgment as a matter of law, Plaintiff's motion for summary judgment will be denied, and Defendant's motion for summary judgment will be granted. A separate order will be entered this date in accordance with this opinion.

May 26, 2023

Charles R. Simpson III, Senior Judge
United States District Court

16